IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Wayne R. Smith, ) | C/A No. 0:12-2447-DCN-PJG |
|                 Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security,[1] ) | |
|                 Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Wayne R. Smith ("Smith"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In May 2010, Smith applied for DIB, alleging disability beginning January 13, 2010. Smith's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 11, 2011, at which Smith, who was represented by Robertson H. Wendt, Jr., Esquire, appeared and testified. After hearing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



testimony from a vocational expert, the ALJ issued a decision on December 7, 2011 finding that Smith was not disabled. (Tr. 21-31.)

Smith was forty-four years old on his disability onset date. (Tr. 142.) He has a high school education and additional training as a firefighter, and has past relevant work experience as a firefighter and battalion chief. (Tr. 147.) In his application, Smith alleged disability since January 13, 2010 due to PTSD, depression, a sleep disorder, and bulging discs. (Tr. 146.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 23, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: depression, post-traumatic stress disorder (PTSD), and back disorder (20 CFR 404.1520(c)).
   \* \* \*
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
   \* \* \*
5. . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. He is restricted to performing simple, routine tasks that are low stress, not requiring major decision making or changes in schedule. The claimant is also limited to performing jobs that do not require contact with the public or more than limited contact with coworkers.
   \* \* \*
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
   \* \* \*
7. The claimant was born . . . [in] 1965, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).



8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 23, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 23-30.) On June 28, 2012, the Appeals Council denied Smith's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;



(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

Smith raises the following issue for this judicial review:

> The ALJ's [residual functional capacity] findings were not supported by substantial evidence and were based on legal error[.]

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

**A.    Opinions of C. Barton Saylor, Ph.D.**

Smith first argues that the ALJ erred by misinterpreting the opinions of Dr. Saylor, Smith's treating psychologist. After discussing Dr. Saylor's treatment notes, the ALJ described an opinion by Dr. Saylor as follows:

> In September 2011, Dr. Saylor completed a treatment progress summary. Dr. Saylor stated that the claimant tended to ruminate and perseverate on the themes of how he was no longer able to do the work he used to do as a firefighter. He stated that it seemed very difficult for the claimant to envision alternatives or options other than disability. Dr. Saylor stated that empirical personality scales showed that the claimant still felt overwhelmed by anxiety and depression. He reported



>neurovegetative symptoms with loss of energy, sleep problems, fatigue, and difficulty concentrating or finishing tasks. However, Dr. Saylor stated that in his opinion the claimant was capable of returning to the work force, just not to a job in firefighting or emergency services response. Dr. Saylor noted that a return to work should be gradual since significant amounts of new stress could cause vulnerability to decompensation. (Exhibit 23F).

(Tr. 27.) In weighing Dr. Saylor's opinion, the ALJ found that

>Dr. Saylor stated that the claimant was capable of returning to the work force but not to a job in firefighting or emergency services response. Dr. Saylor's opinion is consistent with the other evidence of records and thus I have given it great weight. I have also taken into account his statement that a return to work should be gradual since significant amounts of new stress could cause vulnerability to decompensation. Based on his findings I limited the claimant to performing simple, routine tasks that are low stress, not requiring major decision making or changes in schedule. I also limited him to performing jobs not requiring contact with the public or more than limited contact with coworkers. (Exhibit 23F).

(Tr. 29.) Smith first argues that the ALJ's decision is unsupported because Dr. Saylor's opinion stated that he believed Smith "is capable of returning to work force *at some point*" and that his return should be a gradual process. (Tr. 339) (emphasis added). The Commissioner disagrees, in part based on her position that the ALJ's interpretation of Dr. Saylor's opinion was reasonable and consistent with the record as a whole. In reply, Smith reasserts his position that the ALJ's interpretation is contradicted by the record, relying in part on Dr. Saylor's "no" response to the question "[h]as the patient been able to sustain the mental demand of full-time work at any level of skill or psychological stress since January 2010[.]" (Tr. 346.) Smith also argues that SSR 85-15, which discusses stress and mental illness, supports an opinion that Smith was unable to return to full-time work due to psychological stress. Finally, Smith points out that Dr. Saylor checked a box indicating that from January 2010 through September 2011 Smith was "markedly limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 351.) Smith argues that the ALJ failed to give good reasons for rejecting or failing to include these limitations in assessing Smith's residual functional capacity.

Upon review of the parties's arguments and the record in this matter, including the entirety of Dr. Saylor's opinions, the court finds that Smith has failed to demonstrate that the ALJ erred. The ALJ specifically acknowledged and included Dr. Saylor's opinion that Smith could not return to his past relevant work as a firefighter. Additionally, the ALJ reasonably interpreted Dr. Saylor's opinions in formulating Smith's residual functional capacity and finding that jobs exist that Smith can perform. The narrative portion of Dr. Saylor's opinion included statements that he did not believe an award of disability benefits was a "healthy outcome for [Smith] in the long run"; that Smith "is a very personable and likeable gentleman and it seems to [Dr. Saylor] that he could retrain in a different field if he could come to accept that his firefighting days are over"; and that Smith "appears to be young enough and healthy enough that working in a new field would not only be reasonable and feasible but desirable." (Tr. 339, 340.) Moreover, the ALJ explicitly acknowledged that Dr. Saylor's opinion that Smith's return to the workforce should be gradual because significant new amounts of stress would make Smith vulnerable to decompensation and included specific additional low stress limitations to account for that opinion. Furthermore, the ALJ's interpretation of Dr. Saylor's opinion is particularly reasonable in light of the evidence of record, including Smith's daily and social activities, Smith's reports of improvement, and Dr. Katherine Smith's indications that there was no evidence that Smith could not perform other work. Based on the overall tone of Dr. Saylor's opinion, Smith's treatment records, and the limitations that the ALJ included to address Dr. Saylor's opinion regarding Smith's ability to cope with stress, the court cannot say that the ALJ's



interpretation of Dr. Saylor's opinion or the ALJ's residual functional capacity assessment was controlled by an error of law or unsupported by substantial evidence.

**B.     Other Issues**

The court has reviewed Smith's other allegations of error (see Pl.'s Br. at 20-21) and finds based on a review of the record and for the reasons argued by the Commissioner (see Def.'s Br. at 15-17) that Smith has failed to demonstrate that the ALJ's evaluation of the opinions of Dr. Smith or Dr. Haskins were controlled by an error of law or unsupported by substantial evidence.

### RECOMMENDATION

For the foregoing reasons, the court finds that Smith has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 6, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).