**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| WAYNE R. SMITH, ) | |
| ) | No. 0:12-cv-02447-DCN |
| Claimant, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security,* ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Paige J. Gossett's report and recommendation ("R&R") that the court affirm the Acting Commissioner of Social Security's decision to deny claimant Wayne R. Smith's ("Smith") application for disability insurance benefits ("DIB"). Smith has filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A. Procedural History

Smith filed an application for DIB in May 2010, alleging that he had been disabled since January 13, 2010. The Social Security Administration ("the Agency") denied Smith's application both initially and on reconsideration. Smith requested a hearing before an administrative law judge ("ALJ") and ALJ James Scott presided over a hearing held on October 11, 2011. Tr. 37. At the hearing, Smith amended his alleged disability onset date to February 23, 2010, the day after the last date that Smith worked.

1

Tr. 40. In a decision issued on December 7, 2011, the ALJ determined that Smith was not disabled. The Appeals Council denied review on June 28, 2012, making the ALJ's decision the final decision of the Commissioner.

Smith filed this action for judicial review on August 8, 2012. Compl., ECF No. 1. On March 18, 2013, he filed a brief requesting that the Commissioner's decision be reversed and the case remanded to the Agency for further administrative proceedings. Claimant's Br. 1, ECF No. 14. On May 1, 2013, the Commissioner filed a brief contending that her decision should be upheld. Commissioner's Br. 1, ECF No. 16. On December 6, 2013, the magistrate judge issued the instant R&R, recommending that the Commissioner's decision be affirmed. R&R 1, ECF No. 24. Smith objected to portions of the R&R on December 23, 2013. Claimant's Objections, ECF No. 25. The Commissioner replied to those objections on January 9, 2014. Commissioner's Reply, ECF No. 18. This matter has been fully briefed and is now ripe for the court's review.

### B. Smith's Medical History

The court dispenses with a lengthy recitation of Smith's medical history and notes only a few relevant facts. Smith was forty-four years old on his alleged disability onset date. Tr. 29. He has at least a high school education and past relevant work experience as a firefighter. Id. Smith is a former fire captain and battalion chief with the City of Charleston Fire Department; he lost nine colleagues in the Sofa Super Store fire that occurred on June 18, 2007. Tr. 25-26. Smith's mental health problems, specifically, post-traumatic stress disorder ("PTSD") and depression, can be traced to the Sofa Super Store tragedy. Id.

Psychologist C. Barton Saylor, Ph. D., met with Smith roughly once a month from October 5, 2010 through at least September 30, 2011. Tr. 269-71, 289-90, 332-36, 338-40. On January 26, 2011, Dr. Saylor diagnosed Smith with PTSD and adjustment disorder with depressed mood. Tr. 290. Dr. Saylor noted that Smith had "obvious" work-related limitation in function due to his medical condition, and that Smith "is anxious, lacking confidence and trust-concentration is impaired." Id.

On September 27, 2011, Dr. Saylor completed a form provided by Smith's attorney entitled TREATING PSYCHOLOGIST'S STATEMENT. Tr. 341. In this form, Dr. Saylor stated that he had reviewed Smith's mental health records from other healthcare providers. Id. Dr. Saylor did not respond to the question "Are you the patient's treating psychologist?" Id. Dr. Saylor diagnosed Smith with PTSD and major depressive disorder. Id. He also noted that Smith had no restrictions of activities of daily living; mild difficulties in maintaining social functioning, concentration, persistence, and pace; and no episodes of decompensation. Tr. 344. Dr. Saylor responded "No" to the question "Has the patient been able to sustain the mental demands of full-time work at any level of skill or psychological stress since January 2010?" Tr. 346. Finally, Dr. Saylor responded to the question "What is the patient's prognosis for return to full time work?"

> In my opinion, although the patient cannot realistically be projected to return to work as a firefighter, his prognosis to return to some form of full time work is good, and I feel it would serve his psychological health if he were to return to work.

Id.

On September 30, 2011, Dr. Saylor provided the following opinion regarding Smith's mental health and his ability to work.

3

> [Smith] tends to ruminate and perseverate on the themes of how he is no longer able to do the work he used to do as a firefighter. It seems very difficult for Wayne to envision alternatives or options other than remaining totally disabled.
>
> . . .
>
> In my last visit with Wayne, I attempted to address with him possible contingencies for making plans depending on the outcome of the [Social Security disability] hearing. Wayne seems to have given little thought to considering alternatives other than being awarded one hundred percent disability. I noted to him that although this may assist him in the short run that I do not feel it is a healthy outcome for him in the long run. <u>In my opinion, Wayne is capable of returning to the work force at some point. I believe that it would be very difficult for him to ever return to a job in firefighting or any job that involved emergency service responses. However, Wayne is a very personable and likeable gentleman and it seems to me that he could retrain in a different field if he could come to accept that his firefighting days are over</u>. . . .
>
> . . . <u>I believe that return to the work force should be a gradual process for Wayne</u> because if he were to attempt to suddenly take on significant new amounts of stress, I believe that he would be vulnerable to decompensation. However, in the long run I believe that it is important for Wayne's mental health to not have as his only identity a man who no longer has any positive contribution to make in terms of work. <u>He appears to be young enough and healthy enough that working in a new field would not only be reasonable and feasible but desirable.</u>
>
> **Summary and Conclusions:**
>
> I have discussed these observations with Wayne and, although I believe that he is uncomfortable about the idea that at some point he may have to work outside the home in a different career than firefighting, he also seems to recognize that it is in his interest to not persist permanently in a sedentary and passive lifestyle. For the sake of his own physical health, his marriage, and his family it seems to be important that Wayne Smith accept that he can still make a positive contribution and that he has the resources to do so.

Tr. 338-40 (emphasis added).

### C. ALJ's Findings

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

4

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by his residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The claimant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

To determine whether Smith was disabled from February 23, 2010, through the date of his decision, the ALJ employed the statutorily-required five-step sequential evaluation process. At step one, the ALJ found that Smith did not engage in substantial gainful activity during the period at issue. Tr. 23. At step two, the ALJ found that Smith suffered from the following severe impairments: depression, PTSD, and a back disorder. Id. At step three, the ALJ found that Smith's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of

Impairments. Tr. 24. Before reaching the fourth step, the ALJ determined that Smith retained the residual functional capacity ("RFC") to perform sedentary work with a number of limitations. Tr. 25. Specifically, the ALJ found that Smith could lift and carry up to ten pounds occasionally and lesser amounts frequently; sit for six hours in an eight-hour work day; and stand and walk. Id. The ALJ restricted Smith to performing "simple, routine tasks that are low stress, not requiring major decision making or changes in schedule," in "jobs that do not require contact with the public or more than limited contact with coworkers." Id. At step four, the ALJ found that Smith was unable to perform his past relevant work as a firefighter. Tr. 29. Finally, at the fifth step, the ALJ found that Smith could perform jobs existing in significant numbers in the national economy and concluded that he was not disabled during the period at issue. Tr. 29-30.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of

evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

### III.   DISCUSSION

Smith makes two objections to the magistrate judge's R&R. The court considers these objections in turn.

**A.  Dr. Saylor's Opinion**

Smith objects that the magistrate judge erred when she found that the ALJ properly considered Dr. Saylor's opinion. Smith argues that the magistrate's judge's recommendation "ignores Dr. Saylor's unequivocal opinion that Smith had been unable to sustain the demands of full-time work at any level of psychological stress since the alleged onset date." Claimant's Objections 3.

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence. 20 C.F.R. § 404.1527(c). Medical opinions are evaluated pursuant to the following non-exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). In general, more weight is given to the opinion of a "source who has examined [a claimant] than to the opinion of a source who has not," 20 C.F.R. § 404.1527(c)(1), but "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

7

accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must also give specific reasons for the weight given to a treating physician's medical opinion. See SSR 96-2p, 1996 WL 374188 (July 2, 1996).

Dr. Saylor's opinion is not as one-sided as Smith suggests. Instead, the doctor's treatment notes and more formal written opinions present a nuanced picture of Smith as a man who faces significant mental health challenges but who can ultimately be expected to return to the work force in a capacity different from his previous role as a firefighter. The ALJ extensively discussed Dr. Saylor's treatment notes and opinions, giving Dr. Saylor's opinion "great weight" because it was consistent with the other evidence in the record. Tr. 27-29. Because Dr. Saylor suggested that Smith's return to the work force should be gradual, the ALJ "limited the claimant to performing simple, routine tasks that are low stress, not requiring major decision making or changes in schedule." Tr. 29. The ALJ also limited Smith "to performing jobs not requiring contact with the public or more than limited contact with coworkers in consideration of moderate limitations in social functioning and concentration, persistence, and pace." Id.

It was not error for the ALJ to assign great weight to Dr. Saylor's opinion and to characterize that opinion as supporting a finding that Smith was not disabled. Indeed, the ALJ's RFC assessment reflects a number of appropriate limitations that are in keeping with Dr. Saylor's findings as well as the findings of other treating physicians.[1] In short,

---

[1] For example, Katherine Smith, D.O. (no relation to the claimant), provided Smith with mental health treatment on several occasions in 2010. Dr. Smith noted on July 15, 2010 that Smith had "serious" work-related limitations in function if he were to continue work within the fire department, but that he had no work-related limitations in function if he were to work "outside Fire Dept." Tr. 234. Dr. Smith also wrote that Smith

> reported that he thinks that he can't work another job b/c he has no training or skills in another area. He did not say this was due to mental health issues. I cannot say that Pt cannot work at another job outside of Fire dept as I have no

8

the ALJ's evaluation of Dr. Saylor's opinion was supported by substantial evidence, even though Dr. Saylor's records contain some indication that Smith's return to full-time work might be a challenging transition.

As the ALJ's assessment of Dr. Saylor's opinion was supported by substantial evidence, Smith's first objection fails.

### B. Closed Period of Benefits

Smith next contends that the magistrate judge's R&R "ignores the fact that the ALJ could have awarded continuing disability with the recommendation that Smith's claim be reevaluated under continuing disability review . . . ." Id. at 4. This appears to be an argument that the magistrate judge erred because the ALJ could have awarded Smith a short period of benefits rather than outright denying his claim. The Commissioner responds that this argument is waived because Smith first raised it in his objections to the R&R.

The Commissioner supports her waiver argument with citation to two cases that are not particularly on point. In SunBridge Care & Rehab. for Pembroke v. Leavitt, 340 F. App'x 929, 932 n.5 (4th Cir. 2009) and Hunt v. Nuth, 57 F.3d 1327 (4th Cir. 1995), the Fourth Circuit explained that it would not consider an argument first advanced in an appellate reply that could have been raised in an initial appellate brief. The Hunt court explained that "appellate courts generally will not address new arguments raised in a reply brief because it would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised." 57 F.3d at 1338; see also SunBridge, 340

---

evidence of this type of disability or failure to do another type of job . . . . I am unable to comment & support such a claim.

Tr. 331.

F. App'x at 932 n.5 ("The argument was readily available at the time of briefing, yet SunBridge mentioned it only in the reply brief. . . . [T]he Government would be prejudiced by the consideration of this issue because it lacked an adequate opportunity to respond." (internal citations omitted)). The case at hand deals with an argument raised in objections to an R&R, not one raised in an appellate reply brief. Moreover, the Commissioner has had ample opportunity – in her reply – to respond to the arguments that Smith now advances. While the magistrate judge certainly did not err by failing to discuss an issue that had not been raised by the parties, it is neither unfair to the Commissioner nor otherwise risky for the court to consider this argument. As a result, the court will consider the substance of Smith's second objection.

Smith correctly states that the Agency can choose to award a claimant benefits subject to continuing disability review. 20 C.F.R. §§ 404.1589, 404.1590. In this case, the ALJ did not go that route; instead, he decided to deny Smith benefits all together. It is the magistrate judge's duty – as well as this court's – to decide whether the ALJ's decision was supported by substantial evidence. Neither the magistrate judge nor this court is empowered to engage in a counter-factual analysis of whether alternative decisions that the ALJ did not make would have been supported by substantial evidence. Hays, 907 F.2d at 1456 ("[N]or is it the court's function to substitute its judgment for that of the Secretary . . . .").

As explained above, the ALJ's decision to deny Smith benefits was supported by substantial evidence. As a result, Smith's second objection fails.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's report & recommendation, ECF No. 24, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 21, 2014**
**Charleston, South Carolina**